

Dated: January 15 2010

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **In Re:** Patrick Harrington | ) | Case No. 07-34877 |
| Cynthia Harrington | ) | |
| | ) | Chapter 7 |
| **Debtor(s)** | ) | |
| | ) | **JUDGE MARY ANN WHIPPLE** |
| | ) | |

MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO REDEEM

The court held a hearing on January 14, 2010, on Debtor Cynthia Harrington's motion to redeem [Doc # 94] a motor vehicle under 11 U.S.C. § 722 from the lien of Online Auto Wholesalers, LLC ("Online") and Online's objection to the motion [Doc. # 97].[1] The court must determine the value of Debtor's motor vehicle under § 506(a)(2) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 11 U.S.C. § 506(a), which became effective in cases filed on or after October 17, 2005, as this one was.

---

[1] The court has jurisdiction over Debtors' chapter 7 case pursuant to 28 U.S.C. §§ 1334(a) and 157(a). The United States District Court for the Northern District of Ohio has referred all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges in this district. General Order 84-1. The motion to redeem is a core proceeding that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(K) and (O).

In her motion and at the hearing, Debtor asserted that the redemption value of her 2002 Ford Taurus-V6 Sedan 4D SE is $500.00. In its response and at the hearing, Online asserted that the redemption value of Debtor's car is $2,900.00.

Under § 722 of the Bankruptcy Code, as amended by BAPCPA, 11 U.S.C. § 722, an individual debtor may redeem consumer goods from a lien securing a dischargeable consumer debt, if the property is exempt under § 522 or has been abandoned under § 554, by paying the lienholder in full at the time of redemption the amount of the allowed secured claim that is secured by the lien. The only change to the text of § 722 under BAPCPA was addition of the language requiring the redemption amount to be paid in full at the time of redemption. Addition of this language to § 722 did not change the law in the Sixth Circuit, as that court had long ago decided that redemption value had to paid in a lump sum. *In re Bell*, 700 F.2d 1053, 1058 (6th Cir. 1983). Debtor did not contest that the redemption amount would have to be paid in a lump sum, nor did Online dispute that Ms. Harrington's car is subject to redemption from its lien. Rather, as is generally the case, the parties dispute the amount that must be paid by Ms. Harrington to Online to effect the redemption.

The "allowed secured claim" that Debtor must pay to redeem her car from Online's lien is defined in § 506(a)(1) as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use on a plan affecting such creditor's interest.

The pre-BAPCPA version of § 506(a) did not contain a specific valuation standard, leaving it to the courts to determine valuation standards appropriate to specific provisions of and issues under the Bankruptcy Code. The Sixth Circuit had not ruled before BAPCPA on the proper valuation standards for a secured creditor's allowed claim for purposes of redemption under § 722. In the absence of

2

binding Sixth Circuit authority, courts in this circuit generally held that a creditor's allowed secured claim under pre-BAPCPA § 506(a) for purposes of redemption under § 722 was measured by the liquidation value of the collateral, that is, the amount that the creditor would expect to recover upon repossession and sale by auction or other wholesale means. *Triad Financial Corp. v. Weathington (In re Weathington)*, 254 B.R. 895, 899 (B.A.P. 6th Cir. 2000); *see also In re Donley*, 217 B.R. 1004,1007 (Bankr. S.D. Ohio 1998).

Under BAPCPA, however, Congress added a statutory valuation standard in § 506(a)(2) that applies to redemption of collateral from liens under § 722. Section 506(a)(2) reads as follows:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time the value is determined.

The Supreme Court set the standard for valuing property retained by debtors in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 963, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). Observing that § 506(a) of the Bankruptcy Code contained no statutory valuation standard, *Rash* determined that, under § 506(a), the value of property retained when the debtor decides to "cram-down" a creditor's claim in a chapter 13 case is the "cost the debtor would incur to obtain a like asset for the same proposed use." In other words, *Rash* required a debtor to value the creditor's collateral in a chapter 13 at replacement value. In new § 506(a)(2) Congress appears to be codifying *Rash* for application to a broader set of legal circumstances.[2] Section 506(a)(2) thus changes the standard

---

[2] The Supreme Court's rationale for applying replacement value in the context of Chapter 13 cram-downs was that it would more accurately reflect the loss of value of the collateral to the creditor from deterioration caused by retention and continued use of the property by the debtor. *Id.*, 520 U.S. at 962-63. But where the secured claim is being paid in a lump sum, as must now occur by statute under amended § 722, instead of over time as in a chapter 13 plan, and the creditor is not therefore subject to the risk of further collateral deterioration, this rationale does not seem to

3

generally applied pre-BAPCPA by courts in the Sixth Circuit for valuing collateral and determining a creditor's allowed secured claim for purposes of redemption under § 722. The court must therefore determine in this particular case "the price a retail merchant would charge for property of that kind [2002 Ford Taurus Sedan] considering the age and condition of the property at the time value is determined."

No consensus has emerged in the so far relatively sparse case law interpreting § 506(a)(2) as to how retail value should be determined, and the results reached really depend, not surprisingly, on the overall record a court is presented with in a particular case. *See In re Eddins*, 355 B.R. 849 (Bankr. W.D. Okla. 2006)(Chapter 13 cramdown of non-910 vehicle; N.A.D.A. Guide retail value is starting point); *In re Brown*, C/A No. 06-00197-JW, 2006 Bankr. LEXIS 713, 2006 WL 3692609 (Bankr. D.S.C., April 24, 2006)(court rejects debtor's market reports evidence in favor of creditor's appraiser's report) ; *In re Feagans*, No. 06-20049, 2006 Bankr. LEXIS 2872 (Bankr. D. Kan., October 18, 2006)(rejects creditor's N.A.D.A. Guide valuation in favor of creditor's proffered opinion testimony from car salesperson as to what she would sell vehicle for on lot)*; In re Mayland*, Bankr. No. 06-10283, 2006 Bankr. LEXIS 967 at *5, 2006 WL 1476927 at *2 (Bankr. M.D.N.C., May 26, 2006) (starting point for determining replacement value under § 506(a)(2) is 90% of the retail value of the vehicle listed by the NADA Guide, explaining that adjustments still need to be made to the prices printed in the N.A.D.A. Guide, such as for reconditioning costs incurred to put a vehicle into saleable condition).

Both parties presented published market reports to the court to support their positions, with

---

work. Moreover, in *Rash,* 520 U.S. at 965, n.6, and in case law since *Rash*, *see, e.g., In re Bryan*, 318 B.R. 708, 710 (Bankr. W.D. Mo. 2004)(defines retail value as the price a willing buyer is willing to pay for any car and replacement value as the price a willing buyer is willing to pay for a similar car minus the cost of sale), replacement value was not necessarily equated with retail value, as Congress has now chosen to do for at least some circumstances. Nevertheless, despite this disconnect, the new statutory replacement value standard Congress has established in § 506(a)(2) clearly applies to redemptions under amended § 722.

4

Debtor submitting a Kelly Blue Book print out and an NADA printout (dated January 7, 2010) and Online submitting an NADA printout (dated December 17, 2009). The dates on the two NADA printout were different and Ms. Harrington specified the mileage as 140,000 in her search, while Online apparently did not specify mileage. However, the court finds the market printouts of both parties of little probative value except to the extent that they show the court the general level of depreciation of the car. The reasons they are of little probative value is that all three of them are directed primarily at (and the parties are arguing) trade in values, which was the general valuation standard used under *Weathington* but is not the same as the § 506(a)(2) valuation standard of the "price a retail merchant would charge for property of that kind."

Instead, the court finds that the most probative evidence of the value of the vehicle for redemption purposes under § 506(a)(2) is the actual circumstances of its acquisition.[3] Debtor bought this car from Online very recently, on July 11, 2009, approximately 3 months before the case was converted to Chapter 7. Online is a merchant in Sandusky, Ohio that is in the regular business of car sales. Debtor did not contest that she paid Online $3,941.94 for the car and borrowed that sum from it to pay the purchase price when she bought it. Because of its unusually striking recency, the actual arms length transaction for this vehicle between this Debtor and the instant retail merchant demonstrates that the retail value of the car, which had approximately 140,000 miles on it when it was acquired, is much closer to the $3,941 amount than the $500 amount asserted by the Debtor. And while Online's NADA market printout shows a "Clean Retail" value of $4,750 for the car, that probity of that amount is likewise contradicted by the parties' July 11, 2009, transaction for $3,941. As one court has aptly recognized, the actual sales price one retail merchant might charge is not based

---

[3] Debtors commenced this case as a Chapter 7 case on November 8, 2007. Their motion to convert it to Chapter 13 was granted on March 6, 2008. Their motion to reconvert it to Chapter 7 was granted on October 29, 2009. Debtor incurred the debt in issue and purchased the car while she was still a Chapter 13 debtor. *See* 11 U.S.C. § 348(a) and (d).

5

solely on market guides such as N.A.D.A. or Kelley Blue Book: "just because market guides say they reflect 'retail' value does not mean they reflect a realistic retail sales price." *Feagans*, 2006 Bankr. LEXIS 2872 at *11-*12. Online's document also omits to state the mileage on which it is based, as Ms. Harrington points out. Thus, the court will adjust the purchase price paid for the vehicle for a depreciation figure since July 11, 2009, which the parties' differently dated documents, while not an exact match for another, show by comparison to be in the range of $100 to $200 per month. As approximately six months have elapsed from the purchase date to the redemption hearing, the court will deduct $1,000 from Debtor's purchase price to account for its use and depreciation over that time.

Based on the foregoing reasons and authorities, and as otherwise stated on the record by the court at the hearing, the court determines that the replacement value of Debtor's car based on the retail price a retail merchant would charge Debtor to acquire it is $2,900. The court arrived at this amount as explained above, and has not adopted it because that was the amount advanced by Online as the Clean Trade-in Value of the vehicle as shown by the N.A.D.A. market printout that it had advanced. Under § 506(a)(2), the court finds that $2,900 is the replacement value that measures Online's secured claim and is thus the amount that Debtor Cynthia Harrington must pay Online in a lump sum to redeem her car from Online's lien under 11 U.S.C. § 722.

**IT IS THEREFORE ORDERED** that Debtor Cynthia Harrington's Motion to Redeem [Doc. # 94] be, and hereby is, **GRANTED** only to the extent provided in this order**;** and

**IT IS FURTHER ORDERED** that Debtor Cynthia Harrington may redeem her 2002 Ford Taurus Sedan from the lien of Online Auto Wholesalers, LLC by lump sum payment of the total sum of $2,900 within 30 days of the date of entry of this order.